UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80576-CIV-HURLEY

SPEDAG AMERICAS, INC., on behalf of
M + R SPEDAG ASIA GROUP MEMBERS,
    plaintiff,

vs.

PETTERS HOSPITALITY AND ENTERTAINMENT
GROUP LLC and POLAROID CONSUMER
ELECTRONICS, LLC,
    defendants.
_____/

## ORDER GRANTING in PART AND DENYING in PART
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case involves a dispute over payment of $850,000.00 in air freight transportation costs. Plaintiff Spedag Americas, Inc. (Spedag), as representative of its related Asian entities, contracted with Transworld Freight Systems Inc ("Transworld"), a California corporation, to provide transportation of electronic equipment from Asia to its clients in the United States, including the defendants Petters Hospitality and Entertainment Group LLC ("Petters") and Polaroid Consumer Electronics Inc. ("Polaroid").

Spedag, as freight carrier, contends that where a consignee ( as Polaroid or Petters) pays freight charges due under a bill of lading to a freight forwarder (as Transworld ) but the forwarder never pays the carrier, the consignee remains liable to the carrier for the unpaid freight charges. Under this asserted theory of consignee liability, Spedag now moves for entry of final summary judgment against Petters and Polaroid in the principal amount of $850,000.00, the total amount of unpaid freight charges. For reasons which follow, the court has determined to grant the motion the motion as to the issue of liability, and to deny the motion as to the issue of damages.

## I. Facts

Acting through a freight forwarder --Transworld Freight Systems, Inc. -- the parties arranged for the carriage of electronic equipment from Asia to the United States. Spedag, as freight carrier, transported the equipment from shippers in Asia pursuant to bills of lading ("air waybills") listing Polaroid and Petters as consignees. The "air waybills" or bills of lading were marked "freight collect" and "collect as arranged."

Pursuant to a "Co-Operation Agreement" between Spedag and Transworld, Transworld, as freight forwarder, agreed to pay Spedag an agreed upon amount of compensation for the transportation of the shipments, and to take "sole responsibility" for collecting the freight charges from the owners/consignees.

Transworld accordingly issued invoices to collect freight charges from the consignees, such as Peters and Polaroid.[1] Petters and Polaroid promptly paid Transworld for all shipments which they received; however, at some juncture Transworld stopped paying Spedag and instead applied the payments to its own outstanding debts. Spedag made repeated demands on Transworld to collect the amounts due on the related shipments of Polaroid/Petters' goods. Unable to pay, Transworld was ultimately forced into bankruptcy by Spedag. Spedag now brings this suit against Petters and Polaroid, alleging that these consignees remain liable to it under the bills of lading for approximately $850,000.00 in airfreight charges and freight forwarding services.

## II. Standard of Review

---

[1] The invoices prepared in the instant case identified various Asian companies as shippers, and listed Polaroid or Petters as consignees. These invoices contained a "bill to" section designating Polaroid or Petters as consignee, and a "remit to" section" designating Transworld Freight Systems, Inc. as the collecting agent.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v Catreet*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all justifiable inferences in favor of the non-movant. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986); *Clemons v Dougherty County, Ga.*, 684 F.2d 1365 (11th Cir. 1982).

Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Howard v Oregon Television, Inc*, 2008 WL 1947094 (11th Cir. 2008); *Raspanti v Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 2008 WL 227590 (11th Cir. 2008), *citing Celotex Corp v Catrett, supra*, 106 S. Ct. 2548, 2552 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non moving party to come forward with specific facts showing that there is a genuine issue for trial. *Bailey v Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002).

### III. Discussion

A bill of lading is the basic transportation contract between the shipper/consignor and the carrier, the terms and conditions of which bind the shipper and all connecting carriers. *S. Pac. Transp. Co. v. Commercial Metals, Co.*, 456 U.S. 336, 342, 102 S. Ct. 1815, 72 L. Ed.2d 114 (1982). In the absence of a statement to the contrary, when a bill of lading is intended to conform to the industry standard, by default "the consignor remains primarily liable." *Id.* at 343, 102 S. Ct. at 1815.

The default terms and conditions of a standard bill of lading are generally distilled as follows:

> The bill of lading provides that the owner or consignee shall pay the freight and all other lawful charges upon the transported property and that the consignor remains liable to the carrier for all lawful charges. The bill of lading, however, also contains "nonrecourse" and "prepaid" provisions that, if marked by the parties, release the consignor and consignee from liability for the freight charges. If the nonrecourse clause is signed by the consignor and no provision is made for the payment of freight, delivery of the shipment to the consignee relieves the consignor of liability. Similarly, when the prepaid provision on the bill of lading has been marked and the consignee has already paid its bill to the consignor, the consignee is not liable to the carrier for payment of the freight charges.

*C. A .R. Transportation Brokerage Co. v Darden Restaurants, Inc.*, 213 F.3d 474, 478-79 (9th Cir. 2000). In other words, under the default terms of the uniform "straight bill of lading," the shipper/consignor is liable for freight charges unless the bill of lading is marked "nonrecourse," and the consignee is liable for freight charges unless the bill of lading is marked "prepaid." *Id.*

The Eleventh Circuit has adopted a slightly modified version of this rule, holding that a shipper is not relieved of its liability to pay the carrier --even where it has already paid a freight forwarder in full and the bill of lading is marked "freight prepaid" – unless the shipper can demonstrate that the carrier has released it from its obligations under the bill of lading. *National Shipping Co. of Saudi Arabia v Omni Lines, Inc.*,. 106 F.3d 1544 (11th Cir. 1997)(adopting rebuttable presumption of shipper liability), following *Strachan Shipping Co. v Dresser Indus. Inc.*, 701 F.2d 483 (5th Cir. 1983).

The Ninth Circuit has similarly recognized that default liability rules in the shipping context can be modified by contract so as to make "the liability allocation presumption on the bill of lading. ... unnecessary." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th

Cir. 2008), citing *C. A. R. Transportation Brokerage Co v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir. 2000). For example, if the parties enter into a contract before preparing a bill of lading, and there is "an irreconcilable repugnancy between the prior written contract and the bills of lading, that conflict would have to be resolved in favor of the former," *Id.,* citing *Toyo Kisen Kaisha v W.R. Grace & Co.*, 53 F.2d 740, 742 (9th Cir. 1931). In other words, the parties to a freight shipment are generally free to assign liability for the payment of freight charges through a contract separate from the bill of lading, effectively modifying the default rules on either shipper or consignee liability by contract. Such a contract may provide that "the shipper agrees absolutely to pay the charges, or .. merely that he shall pay if the consignee does not pay the charges demanded upon delivery of the goods, or the carrier... may contract that only the [consignee] shall be liable for the freight charges or [that] both the shipper and the consignee may be made liable.*"* *Louisville & Nashville R.R. Co v Central Iron & Coal Co.*, 265 U.S. 59, 66-67, 44 S. Ct. 441, 68 L. Ed. 900 (1924). *Id.*

As Polaroid and Petters are identified as the consignees in the bills of lading at issue in this case, and because the bills of lading were marked "collect as arranged" and "freight collect" – not "prepaid" - in the absence of a separate agreement Petters and Polaroid are liable for Spedag's freight charges on the bills of lading because of the default liability provisions that are part of the bills of lading.

Petters and Polaroid recognize the validity of these general precepts of consignee default liability, but contend that there are several reasons they should not be required to pay twice for the freight charges in question. First, they contend that Transworld acted as the actual or apparent agent of Spedag, such that their remission of payment to Transworld relieves them of liability under the bills of lading. Second, they allege that Transworld and Spedag were engaged in a joint

5

venture, such that their remission of payment to Transworld relieves them of liability under the bills of lading. Third, they contend that Spedag waived any right of recovery against them by specifically instructing them to pay Transworld, and by entering into a written agreement with Transworld which allowed Transworld to field payments for the freight charges. Fourth, they allege that Spedag is equitably estopped from collecting the freight charges from them because Spedag told them to pay the charges to Transworld and they reasonably acted on those instructions and paid Transworld in full, reasonably believing that Transworld since remitted the money to Spedag as prearranged. Finally, Petters and Polaroid assert in affirmative defense that Spedag failed to mitigate its damages by failing to timely advise them about Transworld's failure to remit the monies and by continuing to do business with Transworld on credit long after its account became delinquent. These arguments are addressed in turn in the discussion which follows.

### A.  Actual or Apparent Agency

If Transworld were the agent of Spedag, then Polaroid's and Petters' remission of payment to Transworld would relieve them of liability under the bills of lading. *See Hawkspere Shipping Co., Ltd. v Intamex, S.A.*, 330 F.3d 225 (4th Cir. 2003), citing *Strachan Shipping Co. v Dresser, Indus.*, 701 F.2d 483, 486-87 (5th Cir. 1983). Polaroid and Petters, as the parties asserting the existence of a principal-agent relationship between Spedag and Transworld, have the burden of proof on this issue. *McLean Contracting Co. v Waterman Steamship Corp.* 277 F.3d 477, 479 (4th Cir. 2002).

It is undisputed that Transworld did not have actual authority to act as Spedag's collection agent: There is no evidence that Spedag had any right of control over Transworld's collection of monies due from the defendants. Instead, the Co-Operation Agreement between Spedag and

Transworld provides that "the entire responsibility for the collection and remittance" of collect freight charges rests solely on Transworld. [Co-Operation Agreement ¶3.7]. The Agreement further recites that Spedag and Transworld operate as "independent and separate" freight forwarders, neither one of which has "authority to represent or perform any acts or incur any obligations for or on behalf of the other except as may be expressly and specifically authorized by one party to the other in writing." [Co-Operation Agreement ¶2].

To prove their alternative theory of apparent agency, defendants would be required to show that Spedag created the appearance of an agency relationship by holding out Transworld as authorized to act on its behalf. *Guadagno v Lifemark Hospitals of Florida, Inc.*, 972 So.2d 214 (Fla. 3d DCA 2007). Apparent agency cannot arise from the subjective beliefs of the defendants, or even from appearances created by the purported agent itself [Transworld]. *Id.*

That Spedag may have looked to Transworld to collect freight payments, and even instructed the defendants to remit their payments to Transworld, does not establish this essential element of agency liability.[2] At best this shows that Transworld simply agreed to field payments for Spedag, and in no way implies that Transworld was acting as Spedag's collection agent. *See Hawkspere, supra*, at 236, citing *Strachan Shipping Co.*, 701 F.2d at 486.

As the record does not disclose any triable issue of fact as to whether Transworld acted as an actual or apparent agent for Spedag when it accepted payment from Petters and Polaroid, the defendants do not defeat the instant summary judgment motion under their affirmative defense of actual or apparent agency liability.

---

[2]In this regard, defendants point to deposition testimony of Polaroid representative Scott Kopus who testified that Spedag Vice President Paul Selvage told him "Osie [Transworld] is your point of contact" and that "all your dealings will run through Osie [Transworld]."

### B.  Joint Venture

To establish a joint venture, the following elements must be proved: (1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits, and (5) a duty to share in any losses that may be sustained. *Development Corp of Plan Beach v. WBC Construction LLC,* 925 So.2d 1156 (Fla. 4th DCA 2006).

In this case, defendants fail to create a genuine factual issue as the second, third, fourth and fifth required elements for a joint venture. *Progress Rail Services Corp. v Hillsborough Regional Transit Authority*, 2005 WL 1051932 (M.D. Fla. 2005).  With specific regard to the element of joint control, defendants fail to adduce any evidence that Transworld and Spedag had authority to bind each other in any respect.  To the contrary, the Cooperation Agreement between these parties disavows any intent or authority for either to represent or incur any obligations on behalf of the other.  Additionally, the defendants offer no evidence contradicting the affidavit of Kurt Diener, Spedag CEO, who avers that Transworld had no authority or control of any kind over Spedag's shipment of goods from Asia to the United States.

As defendants fail to demonstrate the existence of any disputed issues of fact as to whether a joint venture existed between Spedag and Transworld, they do not avoid the plaintiff's motion for summary judgment under this asserted theory of affirmative defense.

### C.  **Alteration of Default Liability Provisions by Separate Contract**

Defendants also suggest that Spedag's explicit payment directions and the terms of the Cooperation Agreement between Spedag and Transworld effectively altered otherwise applicable default liability provisions contained in the bills of lading, thereby relieving them of liability under

8

the bills of lading.

While it is generally recognized that a separate contract between the parties to a bill of lading – the shipper, the freight carrier (in this case Spedag) and the consignee (in this case Petters or Polaroid) – can allocate and alter conventional liability for payment of freight charges, there is no support for the proposition that a carrier's contract with a freight forwarder --- who is not a party to the bill of lading – may accomplish the same. *See Oak Harbor Freight Lines, Inc.,* and cases cited *infra* .

In this case, Transworld and Spedag executed the Cooperation Agreement. This agreement does not mention the defendants Petters and Polaroid by name or description, and makes no express or implied statement which would relieve consignees such as Petters or Polaroid of responsibility to pay the carrier ( Spedag ) for air freight charges. This agreement simply provides that Transworld is liable for the charges regardless of whether or not Transworld collects the freight charges from the consignees. This does not imply that the defendants/ consignees are not liable to the carrier. This Agreement thus does not alter the consignees' liability for the freight charges under the bills of lading. *See Oak Harbor Freight Lines, Inc. V Sears Roebuck & Co.* 513 F.3d 949 (9th Cir. 2008).

### D. Equitable Estoppel

Defendants also assert that equitable estoppel bars the double liability of an innocent consignee where, as here, the carrier told them to remit payment to the freight forwarder and they reasonably acted in reliance on those instructions by making payment in full to the freight forwarder as prearranged.

Whether an innocent consignee or freight carrier bears the risk of loss if a freight forwarder fails to forward a freight payment made by the consignee appears to be a question of first

impression in this circuit. However, in discussing related concepts of shipper default liability, the Ninth, Fourth, Fifth and Eleventh Circuits have held that a shipper should bear the risk when it chooses to pay for freight charges through a broker rather than directly to the the carrier. *Oak Harbor Freight Lines, Inc. v Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008)(extending assumption of risk approach to both shipper/consignor and owner/consignee liability); *Hawkspere Shipping Co v Intamex, SA* 330 F.3d 225, 237-38 (4th Cir. 2003); *Strachan Shipping Co v Dresser Industries, Inc.* 701 F.2d 483 (5th Cir. 1983); *National Shipping Co of Saudi Arabia v Omni Lines*, 106 F.3d 1544 (11th Cir. 1997).

As noted by the Fifth Circuit in *Strachan*, quoted with approval by the Eleventh Circuit in *Omni Lines*, 106 F.3d at 1547, the policy reasons for this allocation of liability are persuasive:

> [W]e think that our result comports with economic reality. A freight forwarder provides a service. He sells his expertise and experience in booking and preparing cargo for shipment. He depends upon the fees paid by both shipper and carrier. He has few assets, and he books amounts of cargo far exceeding his net worth. Carriers must expect payment will come from the shipper, although it may pass through the forwarder's hands. While the carrier may extend credit to the forwarder, there is no economically rational motive for the carrier to release the shipper. The more parties that are liable, the greater the assurance for the carrier that he will be paid.

*Strachan,* 701 F.2d at 490. As observed in these cases, it makes sense to place assumption of the risk on the shipper because the shipper is in the best position to avoid liability for double payment by dealing with reputable freight forwarders, contracting with the carrier to secure its own release, or simply paying the carrier directly. *See Omni* at 1547.

This same logic applies to allocation of risk in the parallel "innocent consignee" context. Following the assumption of risk approach to shipper liability embraced by the Ninth, Fourth, Fifth and Eleventh Circuits in *Oak Harbor, Hawkspere, Strachan* and *Omni Lines*, *supra,* this court

10

accordingly holds that an owner/consignee which chooses to remit payment by way of a freight forwarder, rather than directly to the freight carrier, assumes the risk that the forwarder might not forward the freight payment to the carrier. Consignees such as Petters or Polaroid can always avoid the loss and risk of liability for double payments in this situation either by contracting separately with the carrier to eliminate consignee liability, paying the carrier directly, or choosing to deal only with reputable forwarders. A consignee which chooses not to do so appropriately bears the risk that such a choice creates.

Put another way, equitable estoppel principles do not bar double liability of an innocent consignee which chooses to remit payment for freight charges through a freight forwarder under a straight bill of lading. This is true even where, as here, the carrier is aware of the forwarder's financial difficulties and fails to advise the consignee of this fact. *See e.g. Harms Farms Trucking v Woodland Container,* 2006 WL 3483920 (D. Neb. 2006), citing *Central States Trucking Co v Perishable Shippers Ass'n,* 765 F. Sup. 931, 936 (N.D. Ill. 1991)(carrier not estopped from pursing freight charges against shipper merely because it chose to do business with shippers' association after it became aware of association's financial difficulties where carrier did not mark bills of lading "prepaid" and made no misrepresentation to shipper).

Under these circumstances, the consignees's duty to pay under default liability provisions is not discharged, absent evidence that the carrier has actually released the consignee from its duty to pay under the bill of lading. Because Petters and Polaroid have offered no evidence in this case that Spedag in fact released them from their liability to pay under the bill of lading, they fail to defeat the instant motion for summary judgment and remain liable to Spedag for the air freight charges in question. *See Oak Harbor Freight Lines, Inc., supra.*

### E. Failure to Mitigate Damages

Petters and Polaroid further urge that Spedag is estopped from recovering from them because it created its own risk of loss by negligent credit practices, specifically, by continuing to do business with Transworld long after it went into default and by improperly delaying in informing the consignees of its delinquency. In this respect, defendants note that Transworld was in default as early as November 2006, that the accounts receivable grew through December and January to eventually reach $850,000.00, all while Spedag continued to do business with Transworld and neglected to alert the consignees of the mounting delinquency.

For reasons outlined in the foregoing section, principles of equitable estoppel do not apply to alter the rules of default consignee liability under these circumstances. However, the suggestion that Spedag's own negligent credit practices contributed to the extent of its loss does raise a genuine issue of material fact with regard to its alleged failure to mitigate damages, an affirmative defense which was specifically pled by the consignees. In other words, while the issue of Spedag's negligent credit practices and unreasonable delay in informing the consignees of the Transworld collection problem does not raise a bar to the consignee's liability, it does bear on a possible mitigation of damages, i.e. it may impact the amount of recovery properly allowed to Spedag under the circumstances of this case. *See e.g. Poliski Line Oceaniczne v Hooker Chemical Corp*, 499 F. Supp. 94 (S. D .N. Y. 1980)(negligence of carrier in failing to promptly cast off container of hazardous cargo when problems first developed during voyage was matter for possible mitigation of damages, not matter bearing on question of liability).

Spedag, as freight carrier, had a duty to mitigate its losses. *See e.g. Emmco Ins. Co. v Wallenius Caribbean Line, S.A.*, 492 F.2d 508 (5th Cir. 1974)(consignee had duty to mitigate

damages resulting from spoiling of cargo); *Johnson Products Co v M/V La Molinera,* 628 F. Supp. 1240 (S. D. N. Y. 1986)(shipper failed to take steps necessary to mitigate losses by failing to monitor status of cargo after discovering that carrier never received initial freight payment). At the point it knew or should have known about Transworld's money problems, the discharge of this duty arguably encompassed an obligation to terminate its credit and to promptly notify Petters and Polaroid of the delinquency on the account. *Cf. Illinois Central Gulf RR Co v Southern Rock, Inc*. 644 F.2d 1138 (5th Cir. 1981)(consignee's allegation that railroad failed to mitigate damages by improperly delaying in informing consignee of accruing demurrage was unavailing in light of consignee's actual knowledge that demurrage charges were accruing).

   Spedag claims that its actions were reasonable because Transworld forbade it from contacting Polaroid or Petters to inquire about the growing delinquency on threat of business interference litigation, but the reasonableness of its forbearance in this context is not appropriately determined by the court as a matter of law in the context of this summary judgment proceeding. Whether its extension of credit to the freight forwarder under these circumstances was consistent with industry standards, the length and nature of Spedag's relationship with Transworld and the reasonable expectations of the parties to this suit are all relevant factors which bear on this equation, a peculiarly fact sensitive inquiry which is appropriately reserved to the trier of fact at trial. *See e.g. Sara Lee Corporation v Big Ten Productions, Inc.,* 2003 WL 715909 (M. D.N.C. 2003)(denying motion for summary judgment on failure to mitigate defense hinging on allegation that Sara Lee failed to mitigate damages by continuing to ship product to Big Ten even though it knew big Ten was experiencing financial difficulties); *Graybar Electric Co. v Stratton of Florida, Inc.* 509 So.2d 1133 (Fla. 2d DCA 1987)(supplier did not fail to mitigate damages by continuing to extend

credit to subcontractor where there was no evidence that it knew or should have known of subcontractor's money problems, and where evidence at trial demonstrated that it immediately took steps to notify general contractor when the subcontractor deviated from its past payment practices).

## IV. Prejudgment Interest

By its operative third amended complaint, Spedag demands prejudgment interest and post judgment interest in addition to compensatory damages.

As a general rule, assessment of prejudgment interest is an equitable remedy which rests in the sound discretion of the court. *See Blasland, Bouck & Lee, Inc. v City of North Miami,* 283 F.3d 1286 (11th Cir. 2002); *Industrial Risk Insurers v M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434 (11th Cir. 1998); *Hembree v Georgia Power Co.,* 637 F.2d 423 (5th Cir. 1981) and cases cited *infra.*

In this case, the defendants clearly derived no time value from the money withheld by Transworld from Spedag, and have not used the litigation process as a means to coerce credit from Spedag. The court therefore concludes it would be inequitable to charge the defendants with prejudgment interest and declines the plaintiff's request on this element of loss. *See Central States Trucking Co. v Perishable Shippers Ass'n*, 765 F. Supp. 931 (N.D. Ill. 1991)(denying prejudgment interest in double payment consignee liability case).

## V. Conclusion

It is accordingly **ORDERED AND ADJUDGED**:

1. The plaintiff's motion for summary judgment [DE # 24] is **GRANTED** on the issue of consignee liability under the subject bills of lading**.** Accordingly, partial summary judgment is entered in favor of plaintiff on liability only on Count 3 (consignee liability) of the plaintiff's Third Amended Complaint.

2.  The plaintiff's motion for summary judgment [DE# 24] is **DENIED** on the issue of damages due to the existence of genuine issues of material fact pertaining to its alleged failure to mitigate damages. The motion for summary judgment is further **DENIED** with regard to claim for prejudgment interest.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 18th day of August, 2008.

                                                            Daniel T. K. Hurley
                                                        United States District Judge

cc. All counsel